IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JELLEANER N. GREEN, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>ROBERT LEE MARKOVITCH, *et al.*,<br>    Defendants. | 7:18-cv-00098-LSC |

**MEMORANDUM OF OPINION**

Before the Court is Defendants Robert Lee Markovitch ("Markovitch") and Eagle Logistics Services, Inc.'s ("Eagle") motion for partial summary judgment. (Doc. 29.) The motion has been briefed and is ripe for review. For the reasons stated below, Markovitch and Eagle's motion for partial summary judgment (doc. 29) is due to be GRANTED in PART and DENIED in PART.

**I.  BACKGROUND**[1]

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court

This is a personal injury lawsuit arising out of a motor vehicle accident involving a commercial tractor-trailer and a passenger vehicle. The accident happened at approximately 1:30 PM on July 4, 2016 on I-20/59 in Sumter County, Alabama. Plaintiff Jelleaner Green ("Green") was driving a 2016 Chevrolet Malibu. Plaintiff Diane Neal ("Neal") was seated in the Malibu's front passenger seat. Defendant Markovitch was driving a commercial tractor-trailer for Defendant Eagle. As Green was driving in the right-hand lane, she saw Markovitch's truck approach her vehicle from behind in the left-hand lane and move alongside her vehicle. Markovitch then changed lanes and struck Plaintiffs' vehicle. As a result of the impact, the Plaintiffs' vehicle spun in front of Markovitch's vehicle, which pushed the Plaintiffs' vehicle until it came to a stop on the interstate. Dash camera video indicates that Markovitch was traveling approximately 75 miles per hour when the accident happened. Green was driving about 70 miles per hour, which was the speed limit. After the vehicles came to a stop, Plaintiffs exited their

---

judges are not required to ferret out delectable facts buried in a massive record . . . .") (internal quotations omitted).

These facts are taken from the parties' "Undisputed Material Facts" sections of the parties' pleadings in support of and opposing summary judgment. While the parties dispute the relevance and materiality of some of the facts contained herein, they agree that they are undisputed, unless otherwise noted. The Court views the facts in the light most favorable to the non-moving party. *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012).

vehicle through the passenger door and spoke to Markovitch. Green testified that during this conversation Markovitch appeared "spaced-out." (*See* Doc. 29-23 at 27.) According to Plaintiffs, Markovitch told them that he did not see their vehicle. Markovitch claims that this was because Plaintiffs' vehicle was in his blind spot. After the accident, Markovitch remained at the accident scene, called 911, and took pictures of the vehicles involved. He did not receive a traffic citation. Plaintiffs were transported by ambulance to the hospital where they were treated and released that same day.

At the time of the accident, Markovitch had been driving for approximately 1 hour and 34 minutes after having spent around nineteen hours in his sleeper berth. Markovitch was 32 years old and had previously been trained to drive commercial vehicles at truck driving school. He obtained his commercial driver's license ("CDL") on July 8, 2014. On July 28, 2015, Markovitch received a medical examiner's certificate, which qualified him to drive commercial motor vehicles for two years. In August 2015, Markovitch applied to work as a truck driver for Eagle.

On August 24, 2015, Eagle obtained Markovitch's motor vehicle record, which revealed a clean driving record. Eagle also ran a "PSP Detailed Report" on Markovitch to obtain Federal Motor Carrier Safety Administration information about him. Before hiring Markovitch, Eagle made inquiries with

Markovitch's former employers and administered a pre-employment drug test. Markovitch tested negative for drugs and passed Eagle's road evaluation test. Eagle then trained Markovitch on defensive driving and gave him a *Federal Motor Carrier Safety Regulations ("FMCSR")* pocketbook.

In his employment application, Markvovitch noted that he had previously been involved in a single vehicle accident when his commercial vehicle jack-knifed in the snow on December 23, 2014. He also disclosed that he had received citations for failing to obey traffic signals in Kentucky on April 16, 2015 and in Virginia on March 4, 2015. Based on its pre-employment review of Markovitch, Eagle determined that he was qualified to operate a commercial motor vehicle under the *FMCSR*, but assigned him 25 points on its driver's point system.

In September 2015, Markovitch signed Eagle's "Points and Events Page" and acknowledged that "upon reaching a total of 4 events and/or 30 points, my employment will be terminated." (*See* Doc. 29-19 at 2.) Eagle disputes that its policy is to automatically terminate drivers who reach an assessment of 30 points. However, it admits that once a driver reaches 30 points it reviews the driver's record to determine whether to retain and train the driver or terminate employment. On November 20, 2015, Markovitch received a speeding ticket for driving 6 to 10 miles over the speed limit. While

employed by Eagle, he also received a citation for a flat tire and two overweight citations. Eagle did not assess Markovitch any points for these incidents. Because the accident involving Plaintiffs raised Markovitch's point total to more than 30 points, Eagle terminated his employment soon after the accident occurred.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[2] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but determine whether there are any genuine issues

---

[2] A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III. DISCUSSION

Markovitch and Eagle seek summary judgment on all of Plaintiffs' claims against them except Count One, Negligence. Plaintiffs concede that summary judgment is due to be granted on their claims of negligent and wanton maintenance, service, and repair; negligent and wanton hiring and training; and wanton supervision, retention, and entrustment. (Doc. 34 at 2.) The Court will address each of Plaintiffs' remaining claims against Markovitch and Eagle in turn.

### A. Wantonness

Under Alabama law, wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (citing *Bozeman v. Cent. Bank of the S.*, 646 So. 2d 601 (Ala. 1994)) (emphasis in original). Wantonness is not simply a more severe version of negligence, but is an entirely different tort concept. *Id.* While negligence is characterized as "the inadvertent omission of duty," wanton misconduct is characterized by the state of mind of consciously taking an action with knowledge that "the

doing or not doing of [the act] will likely result in injury . . . ." *Id.* (quoting *Tolbert v. Tolbert*, 903 So. 2d 103, 114–15 (Ala. 2004)). "Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness." *Cash v. Caldwell*, 603 So. 2d 1001, 1003 (Ala. 1992).

The question of wantonness often arises in cases like this one. *See, e.g., Essary*, 992 So. 2d at 6–9; *Scott v. Villegas*, 723 So. 2d 642, 642–43 (Ala. 1998). In Alabama, drivers are presumed to not engage in self-destructive behavior. *Essary*, 992 So. 2d at 12. Implicit in this presumption is the requirement that the defendant's behavior creates a "risk of injury to [himself] . . . as real as any risk of injury to the plaintiffs." *Id.* Thus, this Court has previously held that the *Essary* presumption against self-destructive behavior did not apply to a case where a truck driver's attempt to "beat the traffic" caused another vehicle to collide with the trailer of his 18-wheeler. *See McCutchen v. Valley Home, Inc.*, 100 F. Supp. 3d 1235, 1240 (N.D. Ala. 2015). However, there is no per se rule that the driver of a commercial vehicle can never enjoy the *Essary* presumption. *See Craft v. Triumph Logistics, Inc.*, 107 F. Supp. 3d 1218, 1222 (M.D. Ala. 2015).

Based on the facts of this case, the Court finds that the *Essary* presumption applies. Although Markovitch was driving a commercial tractor-

trailer, he could not be sure that a collision with Plaintiffs' vehicle would not injure him as well as Plaintiffs. As a result of the collision, Plaintiffs' vehicle struck the driver's cab portion of Markovitch's truck. This distinguishes this case from *McCutchen* and other cases involving tractor-trailers where the *Essary* presumption did not apply. In those cases, the defendants' actions caused smaller passenger vehicles to collide into the trailer portion of commercial vehicles. *See McCutchen*, 100 F. Supp. 3d at 1237; *Griffin v. Modular Transp. Co.*, No. 2:12-CV-2378-WMA, 2014 WL 896627, at *4 (N.D. Ala. March 6, 2014) (noting that "[a] collision between a car and the *flatbed portion* of a tractor trailer does not carry the same risk of injury to the trailer driver as it does to the car driver." (emphasis in original)). Thus, unlike here, there was no real risk of injury to those defendants.

Although the Court concludes that Markovitch is entitled to the *Essary* presumption, its analysis of Plaintiffs' wantonness claim does not end there. The *Essary* presumption may be rebutted by "evidence of impaired judgment, such as from the consumption of alcohol" or conduct that is so "inherently reckless" that it signals the kind of "depravity consistent with disregard of instincts of safety and self-preservation." *See Essary*, 992 So. 2d at 12. Plaintiffs argue that a reasonable jury could find that Markovitch was intoxicated at the time of the accident. The Court disagrees. The only

evidence Plaintiffs have offered to support this contention is: (1) Green's testimony that after the wreck Markovitch appeared to be "spaced-out" and (2) that the day before the accident, which happened to be the day before Independence Day, Markovitch spent nineteen hours in his sleeper berth. As a matter of law, this evidence is insufficient to support a finding that Markovitch was intoxicated at the time of the accident.

However, there is a genuine dispute of material fact as to whether Markovitch's conduct was "inherently reckless." Markovitch admits that he was using a hands-free headset device to talk on his phone at the time of the accident. Moreover, the dash camera video shows that several vehicles were on the road when this wreck occurred. The dash camera video also reveals that Markovitch was traveling at approximately 75 miles per hour in a 70 mile per hour zone. Markovitch knew of these road conditions and that he was talking on his phone when he opted to change lanes. Despite this, he did not make sure that he was clear of Plaintiffs' vehicle before merging into the right lane. Based on this evidence, the Court concludes that a reasonable jury could find that Markovitch's behavior was "inherently reckless." *See Hornady Truck Line, Inc. v. Meadows*, 847 So. 2d 908, 915–16 (Ala. 2002) (finding a jury question of wantonness where facts included driver's inattentiveness, combined with high rate of speed and adverse

weather conditions). Accordingly, Markovitch and Eagle's motion for summary judgment on Plaintiffs' wantonness claim is due to be denied.

### B. Negligent, Supervision, Retention, and Entrustment

The Alabama Supreme Court has stated the elements of a negligent supervision or retention claim in this way:

> In the master and servant relationship, the master is held responsible *for his servant's incompetency* when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon it being established by affirmative proof that *such incompetency* was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.

*Voyager Ins. Cos. V. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003) (quoting *Lane v. Cent. Bank of Ala., N.A.*, 425 So. 2d 1098, 1100 (Ala. 1983)) (emphasis in original). To prove a negligent entrustment claim, Plaintiffs must also show that Eagle either knew or should have known that Markovitch was incompetent to drive. *See Bruck v. Jim Walter Corp.*, 470 So. 2d 1141, 1144 (Ala. 1985). Thus, to succeed on either of these claims Plaintiffs must prove: (1) that Markovitch was incompetent; and (2) that Eagle either knew or should have known of his incompetency.

In Alabama, "the incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle," *Halford v.*

*Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 413–14 (Ala. 2005), and this may be measured by characteristics such as "general incompetence" or "habitual negligence." *Edwards v. Valentine*, 926 So. 2d 315, 322 (Ala. 2005).

Plaintiffs point to the following evidence as providing support for their contention that Markovitch was incompetent: (1) the December 2014 jack-knife incident; (2) Markovitch's two pre-employment traffic citations; (3) the November 2015 speeding violation; (4) Markovitch's citation for a flat trailer tire; and (5) Markovitch's two post-employment weigh station violations. (*See* Doc. 34 at 27.)[3] This evidence is insufficient to support a finding that Markovitch was habitually negligent. As another court has explained, several traffic violations do not establish habitual negligence if they occur under "diverse circumstances." *See Craft*, 107 F. Supp. 3d at 1225. Instead, the kind of habitual negligence that amounts to incompetence under Alabama law includes situations where an employee engaged in the same negligent practice numerous times. *See, e.g., Pritchett v. ICN Med. All., Inc.*, 938 So. 2d 933, 941 (Ala. 2006) (finding jury question on negligent supervision claim where there was evidence that employee had engaged in improper safety

---

[3] Although Plaintiffs argue that Eagle should have investigated Markovitch's employment and driving history beyond the last three years of his previous employment, they have presented no evidence of any traffic violations committed by Markovitch during this time period. Thus, the only record evidence of Markovitch's driving history comes from the information revealed by Eagle's pre-employment assessment of Markovitch and his post-employment violations.

technique at least 30 to 40 different times). Markovitch's traffic violations do not rise to this level of negligence.

Thus, the Court will turn to the issue of whether there is sufficient evidence to support a finding of general incompetence. As Eagle notes, at the time of the accident, Markovitch had graduated from truck driving school, obtained a CDL, driven a commercial vehicle for about two years, and had no history of accidents involving personal injuries. Based on its pre-employment review of Markovitch, Eagle assigned him 25 points on its driver's point system but determined that he was qualified to operate a commercial motor vehicle.

While the evidence presented by Plaintiffs does show that Markovitch's driving record was not completely free of mistakes, this is insufficient to support a finding of general incompetence. Under Alabama law, Markovitch was not required to be a perfect driver. *See Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45, 52 (Ala. 1995) ("[Defendant]'s prior driving record—two speeding tickets and a suspended prosecution of a DUI charge over a 10-year period—is not sufficient to support a claim of negligent entrustment."); *Thompson v. Havard*, 235 So. 2d 853, 857 (Ala. 1970) ("[P]roof of two moving violations or accidents within a two year period prior to the accident . . . is probably insufficient [to present the question of incompetency to a

jury]." (internal citations and quotations omitted)); *see also Askew v. R & L Transfer, Inc.*, 676 F. Supp. 2d 1298, 1303 (M.D. Ala. 2009) (finding that a driver's record of two moving violations and four minor accidents over an approximately nine-year period did not amount to incompetence). Instead a finding of incompetency requires a showing of a demonstrated inability to properly drive a vehicle. *See Halford*, 921 So. 2d at 413–14. Under this standard, the Court concludes that Markovitch's driving history is insufficient to raise a genuine issue of material fact as to his incompetency.

Finally, Plaintiffs reference Eagle's failure to assign Markovitch points for the jack-knife incident as well as his post-employment speeding, flat tire, and weigh station violations as supporting their contention that Markovitch was incompetent. Evidence of a company policy may be relevant to the competency inquiry when the policy relates to a driver's eligibility to drive. *See Trinidad v. Moore,* No. 2:15cv323-WHA, 2016 WL 4267951, at *3 (M.D. Ala. Aug. 11, 2016). However, Plaintiffs have not shown how Eagle's failure to assess points for these violations affected Markovitch's eligibility. As Eagle notes, its point system did not require it to assess Markovitch with any points for the flat tire and weigh station violations because these were nonmoving violations. Eagle has also presented evidence that due to the circumstances surrounding the jack-knife incident it was not chargeable. Plaintiffs have

presented the Court with no evidence to the contrary. Although the speeding violation was pointable, there is no evidence that had Markovitch been assessed points for the speeding violation he would have reached 30 points on Eagle's driver's point system. Moreover, the Court has considered the speeding violation as part of Markovitch's driving history and determined that, as a matter of law, he was not an incompetent driver. Therefore, Eagle is entitled to summary judgment on Plaintiffs' negligent supervision, retention, and entrustment claims.

## IV. CONCLUSION

For the reasons stated above, Eagle and Markovitch's motion for partial summary judgment (doc. 29) is due to be GRANTED in PART and DENIED in PART. The motion is due to be denied in regards to Plaintiffs' wantonness claims and granted in all other respects. An order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on April 19, 2019.

_____
L. Scott Coogler
United States District Judge

194800